**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2709-22

JAMIE DYKES, individually, and
as Administratrix Ad Prosequendum
of NAPHTALI DYKES, deceased,
and JAMIE DYKES, individually,

      Plaintiffs-Appellants,

v.

COUNTY OF HUDSON,
and HUDSON COUNTY
CORRECTIONAL CENTER,

      Defendants-Respondents,

and

ALAN PORWICH,

      Defendant.

_____

Submitted September 12, 2024 – Decided September 18, 2024

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1577-19.

Stern & Stern LLP, attorneys for appellants (Dwight D. DeStefan, on the briefs).

Chasan Lamparello Mallon & Cappuzzo, PC, attorneys for respondents (Cindy Nan Vogelman, of counsel and on the brief; Priscilla E. Savage, on the brief).

PER CURIAM

Plaintiff Jamie Dykes appeals from June 10, 2022 and March 31, 2023 orders, which denied her motions for reconsideration of a March 24, 2022 order granting defendants County of Hudson and Hudson County Correctional Center (HCCC) summary judgment and dismissal of plaintiff's complaint. We affirm.

Plaintiff's son, Naphtali Dykes was incarcerated at HCCC. On March 9, 2018, at 4:26 p.m. a court ordered Naphtali's[1] release. Naphtali was not released until 1:36 a.m. the following morning. Because there was no public transportation available at that time, and Naphtali had no money for transportation, he began to walk to his mother's home in Newark.

Tragically, Naphtali was struck by a vehicle on Routes 1 and 9, which left him seriously injured in the roadway, and was then fatally struck by a second vehicle. Naphtali was not on defendant's property when he was struck. The area where he was struck had sidewalks.

---

[1] We utilize Naphtali's first name because he shares a surname with his mother. We intend no disrespect.

HCCC does not provide transportation to individuals who are no longer inmates. Naphtali was not told that he could remain overnight in the HCCC lobby until bus service resumed later the next morning.

Plaintiff filed a wrongful death complaint against defendants.[2] Following discovery, defendants moved for summary judgment.

In opposition, plaintiff appended an expert report, which opined that pursuant to the N.J.A.C. 10A:34-4.5(a) and standards promulgated by the American Correctional Association (ACA), defendants owed a duty to protect inmates from harm, including following their release. N.J.A.C. 10:34-4.5(a) states: "All persons detained, arrested, or lawfully confined to a municipal detention facility shall be protected by municipal detention facility staff from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment (see N.J.A.C. 10A:7, Inmate Abuse Reporting and Investigation)."

The expert opined "[a]lthough [Naphtali] was not lawfully confined after his release it is clear that the [N.J.A.C.] places an emphasis on protecting potentially vulnerable persons/inmates from harm." Plaintiff's expert also cited ACA Standards 1A and 2A, which respectively state as follows: "[S]taff,

_____

[2] Neither driver who struck Naphtali is a part of this appeal.

volunteers, contractors, and inmates are protected from injury and illness in the workplace;" and "the community, staff, volunteers, contractors, and inmates are protected from harm. The number and severity of events are minimized." Am. Corr. Ass'n, Core Jail Standards, standards 1A, 2A (2010).

The trial judge found:

> Plaintiff fails to cite any case law where the [c]ourts have found a cognizable duty owed by . . . [c]orrection [c]enters to persons who were released. The Administrative Code strictly deals with detainees, and there is no legal support to extend this to persons who are released by a [c]ourt [o]rder. Plaintiff then attempts to argue under the umbrella of premise liability involving the commercial landowner and invitees. Again, there is simply no legal basis to apply the doctrine of premise liability to the relationship between an inmate and the [c]orrection [c]enter.
>
> [(emphasis added).]

The judge granted summary judgment on March 24, 2022, and retired from the bench a few days later.

Plaintiff then moved for reconsideration. On April 29, 2022, the motion judge denied reconsideration, reasoning that it was "impossible to have this motion heard by someone who is no longer in the [J]udiciary." Plaintiff moved for reconsideration a second time and on June 10, 2022, the judge denied the motion for the same reasons.

4

Plaintiff appealed from the March 24, 2022 order granting summary judgment and the April 29 and June 10, 2022 orders denying reconsideration. She also moved for a limited remand to the motion judge to provide us with his findings on the reconsideration motions. We granted the motion for a limited remand and directed the motion judge to consider the motion for reconsideration on the merits.

At the subsequent oral argument of the reconsideration motion, plaintiff's counsel conceded no caselaw had been provided to the court to show defendants owed a duty to Naphtali. However, counsel reiterated the court overlooked plaintiff's argument there was a duty under the Administrative Code. Counsel also pointed to Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993), and argued its four-part test created by our Supreme Court to determine a commercial or business landowner's liability to a business invitee applied, and defendants breached a duty of care to Naphtali.

Defense counsel responded Hopkins was inapplicable because plaintiff never argued it to the trial judge and the judge did not overlook any law. Addressing the merits, counsel asserted there was no duty owed once Naphtali was released as directed by a court order. Counsel reiterated the Administrative

Code did not apply to individuals who were no longer detainees and reconsideration should be denied.

The motion judge found the Administrative Code was inapplicable. He found plaintiff failed to argue Hopkins in opposition to the initial summary judgment motion and therefore the trial judge did not overlook the case. Regardless, he stated: "The [c]ourt has heard the arguments and is not persuaded that there's anything new or anything that [the trial judge] did that she shouldn't have done in making this determination." The motion judge entered the March 31, 2023 order denying the motion for reconsideration. We subsequently granted defendants' motion to limit the appeal to the June 10, 2022 and March 31, 2023 orders.

I.

In addition to asserting the court has overlooked evidence, "a reconsideration motion is . . . an opportunity to seek to convince the court that . . . it has expressed its decision based upon a palpably incorrect or irrational basis . . . ." Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)). A movant may identify "the matters or controlling decisions which counsel believes the court has overlooked

A-2709-22

or as to which it has erred." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido, 202 N.J. at 87) (alteration in original). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

"When examining a trial court's exercise of discretionary authority," a reviewing court will reverse "only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)). Notwithstanding the abuse of discretion standard, we review "questions of law and the legal consequences that flow from the established facts . . . de novo." Granata v. Broderick, 446 N.J. Super. 449, 467 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

II.

Plaintiff argues summary judgment was granted based upon the faulty rationale that because there is no caselaw precedent addressing a correctional facility's duty to released detainees, no duty can be established under the facts presented here. She contends the trial judge abdicated her obligation to carefully analyze the facts to determine whether defendants owed Naphtali a duty. In addition to the Administrative Code, she claims the summary judgment record contained a discussion of caselaw on landowner liability. Plaintiff asserts the motion judge also erred by adopting the trial judge's incorrect reasoning.

According to plaintiff, there is no precedent setting forth a standard of care because "this case is factually unique . . . ." Nonetheless, Hopkins requires courts to analyze four factors to determine whether a duty exists and if the motion judge had done so, he would have concluded defendants owed Naphtali a duty of care upon his release.

Plaintiff argues all landowners owe a reasonable duty of care, which is not limited to commercial settings. The duty of care is not limited to the boundaries of a landowner's property and extends to instances where a landowner had no control over the dangerous condition.

Plaintiff claims defendants were the proximate cause of Naphtali's death because they set in motion events that had a substantial factor in bringing about

his demise. Whether defendants were the proximate cause or whether the drivers who struck Naphtali were intervening causes is a matter for the jury.

At the outset, we need not discuss the June 10, 2022 order at length because the motion judge followed our instructions when we issued a limited remand directing him to consider the merits of the motion for reconsideration. With respect to the March 31, 2023 order we initially observe our role is to review judgments and orders, not trial court opinions. See Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015). Although the motion judge's findings were not extensive, the denial of reconsideration was neither an abuse of discretion nor a mistaken application of law.

As we recounted, plaintiff has always argued defendants owed a duty to Naphtali like that owed by a landowner to an invitee. Although plaintiff did not raise the Hopkins case by name until the second reconsideration motion, the legal standard and a landowner's duty of care was central to the parties' arguments before the trial and motion judges. Moreover, the transcripts for each court proceeding demonstrate both judges' familiarity with the applicable legal standards, even if their findings did not discuss Hopkins. For these reasons, we part ways with plaintiff's assertion a remand is necessary for application of the facts to the Hopkins factors.

9

"To sustain a cause of action for negligence, a plaintiff must establish four elements:  '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'"  Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).  "[I]t is ordinarily a plaintiff's burden to prove negligence, and . . . it is never presumed."  Khan v. Singh, 200 N.J. 82, 91 (2009) (citing Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139 (1951)).  "Premises liability is a subset of general negligence law."  Peguero v. Tau Kappa Epsilon Loc. Chapter, 439 N.J. Super. 77, 88 (App. Div. 2015).

"A prerequisite to recovery on a negligence theory is a duty owed by defendant to plaintiff."  Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988).  "The duty owed by a premises owner . . . depends in general upon the application of well-established categories through which the status of the injured party is used to define both duty and foreseeability."  Est. of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 316 (2013).  "When a person alleges that a landowner has acted negligently, the existence of a duty by a landowner to exercise reasonable care to third persons is generally governed by the status of the third person—guest, invitee, or trespasser—particularly when the legal relationship is clearly defined."  Robinson v. Vivirito, 217 N.J. 199, 209 (2014) see e.g. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414-15 (2004).

A-2709-22

In <u>Hopkins</u>, our Supreme Court held:

> Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
>
> [132 N.J. at 439 (internal citations omitted).]

"Whether a duty of care exists is a question of law that must be decided by the court." <u>Jerkins v. Anderson</u>, 191 N.J. 285, 294 (2007) (citing <u>Carter Lincoln-Mercury, Inc.</u>, 135 N.J. 182, 194 (1994)).

Guided by these principles, we conclude the motion judge did not err when he denied plaintiff's motion for reconsideration and concluded the trial judge had not failed to consider the relevant facts or legal principles. None of the <u>Hopkins</u> factors support imposing a duty on defendants. The record readily shows the parties' relationship concluded once Naphtali was released.

No evidence shows defendants were aware of the attendant risk, namely the route Naphtali would take once he left HCCC and that he would traverse a

highway to be struck by two vehicles. After all, the section of the highway on which Naphtali was struck had sidewalks. Defendants had no opportunity or ability to exercise care, considering they were required to release him and had no control over him or the path he would take once released. The public interest would not be served by either imposing a duty on an institution to control how an inmate gets home or holding the institution liable for a former inmate's safety on a public roadway, having nothing to do with its incarceration functions.

III.

Finally, plaintiff argues the motion judge disregarded her expert evidence, which opined the Administrative Code established a standard of care that defendants breached in this case. She asserts her expert showed N.J.A.C. 10A:34-4.5 applied to Naphtali after his release from HCCC because even though he was not confined follow his release, the regulation emphasizes protecting potentially vulnerable persons from harm. The expert also opined HCCC's release of Naphtali violated clearly established corrections industry standards and practices promulgated by the ACA, which we have cited.

Plaintiff concedes N.J.A.C. 10A:34-4.5(a) refers only to "persons detained, arrested, or lawfully confined to a municipal detention facility," but argues it should be read in conjunction with case law extending liability beyond

12

the area of ownership or control for tortfeasors.  She claims the Administrative Code supports her logic because N.J.A.C. 10A:31-21.8 requires corrections facilities to "develop written policies and procedures related to release of inmates[,]" which must include "[c]ompletion of [a] release arrangement, including the person or agency to whom the inmate is to be released . . . ." N.J.A.C. 10A:31-21.8(a)(3).

As the motion judge noted, the Administrative Code relied upon by plaintiff's expert had no application to circumstances where an inmate has been released.  We affirm substantially for the reasons expressed by the motion judge.  These arguments lack sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2709-22